FILED

2026 JUL 16 AM 11:21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY: [signature]

- Fee paid
- CV 30
- CV 71
- N/S

RAYMOND K. WRIGHT (SBN 331950)
Law Office of Raymond K. Wright, Inc.
1950 W. Corporate Way #22686
Anaheim, CA 92801
Telephone: (949) 342-6101
Email: Raymond@rkwrightlaw.com

*Attorney for Plaintiff Verity Investigations, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

ex rel. VERITY INVESTIGATIONS, LLC,

Plaintiff/Relator,

vs.

GULLIVER USA, INC.,

GULLIVER EAST, INC.,

Defendants.

Case No. 2:26-CV-07773-RGK (DSRx)

**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 et seq.**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**Jury Trial Demanded**

# *QUI TAM* COMPLAINT

## I. Introduction

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $230,000 (plus mandatory trebling) that Defendants wrongfully obtained in the form of federal guaranteed loans by falsely certifying that they and their affiliates had fewer than 300 employees. Those loans were later forgiven, and the federal government paid the bill.

2. The loans in question were provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In January 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

5. In their Second Draw loan applications, Gulliver USA, Inc. and Gulliver East, Inc. falsely certified to the SBA that they and their affiliates had 17 and 2 employees, respectively. As

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.

[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

a direct result of those false statements, Defendants obtained Second Draw PPP loans totaling $227,330, which were later forgiven.

6. Relator is an outside investigative company that detected Defendants' fraud by reviewing Defendants' and Defendants' affiliates' consolidated financial statements, securities reports and website information. Those documents demonstrate that Defendants and their affiliates had more than 300 employees during the relevant time period.

## II. The Parties

7. Plaintiff Verity Investigations, LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

8. Defendant Gulliver USA, Inc. is a California corporation with its principal place of business in Torrance, California.

9. Defendant Gulliver East, Inc. is a New York corporation with its principal place of business in Yonkers, New York.

## III. Jurisdiction and Venue

10. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

11. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

12. Venue is proper, and this Court has personal jurisdiction over Defendants, because one or more Defendants are "found" in this District. 31 U.S.C. § 3732(a).

## IV. The False Claims Act

13. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

14. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

15. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

16. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

17. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

18. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

19. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

20. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or

demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

22. The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

23. The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

24. As of July 3, 2025, courts must assess a civil penalty of no less than $14,308 and no more than $28,619 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

25. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V. <u>No "Public Disclosure" and Relator Is An Original Source</u>

26. On information and belief, no "public disclosure" has been made of Defendants' false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

27. On information and belief, Defendants' fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

28. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

29. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transaction described herein. Among other things, Relator has "connected the dots" between (a) Defendants' and Defendants' affiliates' consolidated financial statements, securities reports and website information and (b) Defendants' false certifications for a PPP loan.

30. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transaction.

## VI. The Second Draw PPP Loan Program

31. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

32. The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

33. The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan. SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).

[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).

[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

34. The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

35. The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)" for purposes of the Second Draw loan as well.[8]

36. That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6). [9]

37. That regulation defined affiliation broadly:

i. Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[10]

---

[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

[10] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).

ii. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[11]

iii. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[12]

iv. Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[13]

v. Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee

---

[11] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).
[12] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).
[13] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).

has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[14]

38. The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

39. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

40. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

41. The SBA Form 2483 also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

42. The SBA guaranteed 100% of the outstanding balance of Defendants' Second Draw PPP loans. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

[14] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).

## VII. Defendants Falsely Certified to the SBA Their Compliance With the Second Draw PPP Loan Size Requirements

### A. Background: Defendants and Their Affiliates

43. Defendant Gulliver USA, Inc. ("Gulliver USA") is a California corporation[15] with its principal place of business located in Torrance, California.[16]

44. Gulliver USA can be validly served with process via its registered agent at 10824 Bernardo Road, Culver City, CA 90230.

45. Defendant Gulliver East, Inc. ("Gulliver East") is a New York corporation[17] with its principal place of business located in Yonkers, New York.[18]

46. Gulliver East can be validly served with process via its registered agent at 10824 Bernardo Road, Culver City, CA 90230.[19]

47. Gulliver USA and Gulliver East both operate in the appraisal of, distribution of and purchase of used vehicles in California and New York, respectively.[20]

48. Gulliver USA and Gulliver East are both subsidiaries of IDOM Co., Ltd. (IDOM).[21] IDOM was founded in 1994 and is located in Japan.[22] IDOM and its subsidiaries operate primarily in the used car buying and selling industries.[23]

---

[15] California, Secretary of State, *Gulliver USA, Inc. (File No. 2691120)*, https://bizfileonline.sos.ca.gov/search/business.
[16] Gulliver USA's Website –Store Information, Torrance Store, https://gulliverusa.net/torrance/.
[17] New York, Department of State, Division of Corporations, *Gulliver East, Inc. (DOS ID 3524208)*, https://secretaryofstate.com/new-york/.
[18] Gulliver USA's Website –Store Information, New York Store, https://gulliverusa.net/newyork/.
[19] Gulliver East's New York Secretary of State information provides this California address for its registered agent.
[20] Gulliver USA's Website – Homepage, https://gulliverusa.net/.
[21] Gulliver USA's Website – Company Profile, *https://gulliverusa.net/company_guide/*.
[22] Gulliver USA's Website – Company Profile, *https://gulliverusa.net/company_guide/*.
[23] Gulliver USA's Website – Company Profile, *https://gulliverusa.net/company_guide/*.

49. IDOM's 2021 *Annual Securities Report*, lists the subsidiaries of IDOM throughout 2021, including:[24]

i. Gulliver Insurance Co., Ltd., located in Tokyo Japan;

ii. Gulliver USA, Inc., located in California, USA;

iii. Gulliver EAST, Inc., located in New York, USA;

iv. Tokyo My Car Sales Co., Ltd., located in Fukushima, Japan;

v. Motoren Global Co., Ltd., located in Tokyo, Japan;

vi. Motoren Grantz Co., Ltd., located in Chiba, Japan;

vii. IDOM CaaS Technology Co., Ltd., located in Tokyo, Japan;

viii. IDOM Automotive Group Pty Ltd., located in Western Australia;

ix. Buick Holdings Pty Ltd., located in Western Australia;

x. IDOM Automotive Essendon Pty Ltd., located in Victoria, Australia;

xi. Gulliver Australia Pty Ltd., located in Victoria, Australia;

xii. FIDO Cars Pty Ltd., located in Western Australia; and

xiii. Gulliver International New Zealand Co., Ltd, located in Auckland, New Zealand.

50. On information and belief, Defendants Gulliver USA and Gulliver East , and IDOM, and the other entities listed in ¶ 49, *supra*, qualified as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

[24] IDOM, 2021 *Annual Securities Report*, at Page 7, https://disclosure2dl.edinet-fsa.go.jp/searchdocument/pdf/S100LFOM.pdf?sv=2020-08-04&st=2026-07-10T17%3A31%3A27Z&se=2031-06-02T15%3A00%3A00Z&sr=b&sp=rl&sig=EwZJppAbppEeGR2vgP8fQJ87ZXtXVROpgYlYX9RXOy8%3D (Machine Translated by Google).

**B. <u>Gulliver USA's False Statement To Obtain a Second Draw PPP Loan</u>**

51. In 2020, Gulliver USA submitted a borrower application for a First Draw PPP loan in the amount of $236,135 by lender U.S. Bank, National Association.

52. On or about May 5, 2021, the U.S. government forgave 100% of Gulliver USA's First Draw PPP loan, plus interest, in the amount of $238,470.47.

53. In 2021, Gulliver USA applied for a Second Draw PPP loan.

54. Gulliver USA submitted its borrower application form, SBA Form 2483-SD, to U.S. Bank, National Association at 425 Walnut St, Cincinnati, OH 45202.

55. In its Form 2483-SD, Gulliver USA listed its address as 370 Crenshaw Blvd, Ste E202I, Torrance, CA 90503.

56. In its SBA Form 2483-SD, Gulliver USA represented that it and its affiliates had 17 employees—under the 300-employee limit needed to be eligible to apply.

57. Gulliver USA's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Gulliver USA and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

58. Gulliver USA deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Gulliver USA signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

59. On or about March 31, 2021, Gulliver USA was approved for a Second Draw PPP loan in the amount of $204,235 by lender U.S. Bank, National Association.

60. The U.S. government paid lender U.S. Bank, National Association a lender's processing fee of 5% of the $204,235 loan, in the amount of $10,211.75.[25]

61. On or about January 19, 2022, the U.S. government forgave 100% of Gulliver USA's Second Draw PPP loan, plus interest, in the amount of $205,863.28.

### C. Gulliver East's False Statement To Obtain a Second Draw PPP Loan

62. In 2020, Gulliver East submitted a borrower application for a First Draw PPP loan in the amount of $96,067 by lender U.S. Bank, National Association.

63. On or about April 2, 2021, the U.S. government partially forgave Gulliver East's First Draw PPP loan, plus interest, in the amount of $75,045.88.

64. In 2021, Gulliver East applied for a Second Draw PPP loan.

65. Gulliver East submitted its borrower application form, SBA Form 2483-SD, to U.S. Bank, National Association at 425 Walnut St, Cincinnati, OH 45202.

66. In its Form 2483-SD, Gulliver East listed its address as 2423 Central Park Ave, Yonkers, NY 10710.

67. In its SBA Form 2483-SD, Gulliver East represented that it and its affiliates had 2 employees—under the 300-employee limit needed to be eligible to apply.

68. Gulliver East's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Gulliver East and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

69. Gulliver East deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw

---

[25] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

PPP loan. Gulliver East signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

70. On or about March 18, 2021, Gulliver East was approved for a Second Draw PPP loan in the amount of $23,095 by lender U.S. Bank, National Association.

71. The U.S. government paid lender U.S. Bank, National Association a lender's processing fee of 5% of the $23,095 loan, in the amount of $1,154.75.[26]

72. On or about August 24, 2021, the U.S. government forgave 100% of Gulliver East's Second Draw PPP loan, plus interest, in the amount of $23,185.48.

**D. Evidence of Number of Employees**

73. In its SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

74. On its Second Draw PPP loan application, Gulliver USA reported a total of 17 jobs.

75. On its Second Draw PPP loan application, Gulliver East reported a total of 2 jobs.

76. IDOM's 2021 *Annual Securities Report* indicates that Defendants' corporate group collectively had **4,450 employees** in February 2019, **4,464 employees** in February 2020, and **4,629 employees** in February 2021.[27]

---

[26] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[27] IDOM Inc., 2021 *Annual Securities Report*, at Page 2, https://disclosure2dl.edinet-fsa.go.jp/searchdocument/pdf/S100LFOM.pdf?sv=2020-08-04&st=2026-07-10T17%3A31%3A27Z&se=2031-06-02T15%3A00%3A00Z&sr=b&sp=rl&sig=EwZJppAbppEeGR2vgP8fQJ87ZXtXVROpgYlYX9RXOy8%3D (Machine Translated by Google).

77. Additionally, IDOM's *Results for Fiscal Year Ended February 28, 2021*, Investor Relations presentation reiterates that IDOM had a total of consolidated employees in the number of **4,629 employees** as of February, 2021.[28]

78. Accordingly, the employee counts of Defendants and their affiliates greatly surpassed the 300-employee limit for obtaining Second Draw PPP loans, and Defendants were, thus, not eligible for the Second Draw PPP loans they obtained.

79. On information and belief, Defendants' payroll records from 2019, 2020, and 2021 will confirm what they always knew—that they and their affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

80. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

81. Defendants violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of Second Draw PPP loans.

82. The Defendants' knowingly false claim in their SBA Form 2483 were material to the lender's decisions to issue the Second Draw PPP loans and were material to the SBA's decision to forgive those loans and repay the lender.

83. But for Defendants' knowingly false claims, the lender would not have issued the loans and the SBA would not have forgiven them.

84. The Second Draw PPP loans that Defendants obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in

---

[28] IDOM's *Results for Fiscal Year Ended February 28, 2021*, page 84, https://idom-inc.com/wp-content/uploads/2023/07/84fbec36-848c-4d94-b11a-029a6b443524.pdf.

assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

85. The Second Draw PPP loans that Defendants obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

86. The Government later reimbursed the lender 100% of the amounts of Defendants' Second Draw PPP loans, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

87. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

88. Defendants violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, its SBA Forms 2483 and included certification—to support false claims submitted to the lender for approval of Second Draw PPP loans.

89. Defendants' knowingly false records and statements were material to the lender's decisions to issue the Second Draw PPP loans and were material to the SBA's decisions to forgive the loans and repay the lender.

90. But for Defendants' knowingly false records and statements, the lender would not have issued the loan and the SBA would not have forgiven them.

## THIRD CAUSE OF ACTION

### Improperly Avoiding an Obligation to Pay or Transmit Money
### 31 U.S.C. § 3729(a)(1)(G)

91. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

92. Defendants violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding their obligation to repay the loans to the lender.

93. The term "obligation" means "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

94. Defendants' first "obligation" arose from their lending contracts with the lender. Those contracts required Defendants to repay the loans. The lender was delegated authority to act in the Government's place in providing the loans. *See* 15 U.S.C. § 636(F)(ii). The Government was the loans' guarantor and the Government later paid the full loan amounts, plus interest and processing fees, to the lender after the loans were forgiven.

95. Because Defendants were ineligible to receive the loans in the first place, Defendants were also ineligible to have the loans forgiven. *See* 15 U.S.C. § 637(J)(ii) (only an "eligible entity shall be eligible for forgiveness"); *see also* Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Loan Forgiveness, 85 Fed. Reg. 33,004, at 33,005 (June 1, 2020) (if "the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application, or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness"); SBA Procedural Notice No. 5000-20078, at 2 (Jan. 15, 2021) (if "a borrower was ineligible for any portion of its loan amount, forgiveness will be denied for the ineligible portion").[29]

---

[29] https://home.treasury.gov/system/files/136/PPP--Procedural-Notice--PPP-Excess-Loan-Amount-Errors.pdf

96. In order to obtain forgiveness, Defendants submitted Forgiveness Applications to the lender.[30] The lender and the Government relied on those applications in determining to forgive the loans. By submitting Forgiveness Applications, Defendants implicitly certified that they were eligible for the loans in the first place. That certification was false because Defendants were ineligible.

97. In addition, by submitting the Forgiveness Applications to the lender, Defendants knowingly and improperly avoided their obligations to repay the loans.

98. In addition to Defendants' "obligation" to repay the loans as required by the loan contracts, Defendants also had an "obligation" to repay the value of the loans to the SBA because both the loans and the loans' subsequent forgiveness constituted an "overpayment" to Defendants. 31 U.S.C. § 3729(b)(3) (defining "obligation" to include "an established duty … arising from … retention of any overpayment"). The loan was an "overpayment" because Defendants were not eligible to receive them. *See* 31 U.S.C.A. § 3351(4) (an "overpayment" is an "improper payment" including "any payment to an ineligible recipient"); *id.* (5) ("payment" includes "any transfer or commitment for future transfer of Federal funds such as … loan guarantees").

99. Defendants continue to this day to knowingly and improperly avoid their obligations to repay the value of the loans to the SBA.

100. Defendants had an obligation to pay back the SBA the full amount Defendants received in forgiveness of the Second Draw PPP loans.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendants for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven

---

[30] https://www.sba.gov/sites/default/files/2021-07/PPP%20--%20Forgiveness%20Application%20and%20Instructions%20--%203508%20%287.30.2021%29-508.pdf

Second Draw PPP loans and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: July 16, 2026

Respectfully submitted,

By: /s/ Raymond K. Wright

RAYMOND K. WRIGHT (SBN 331950)
Law Office of Raymond K. Wright, Inc.
1950 W. Corporate Way #22686
Anaheim, CA 92801
Telephone: (949)342-6101
Email: Raymond@rkwrightlaw.com
*Attorney for Plaintiff*